UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **ANNETTE GARY CLARK,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 2:14-CV-02086-MHH** |
| } | |
| **CAROLYN W. COLVIN,** } | |
| **Commissioner of the** } | |
| **Social Security Administration,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Pursuant to 42 U.S.C. § 405(g), plaintiff Annette Clark seeks judicial review of a final adverse decision of the Commissioner of Social Security. The Commissioner denied her claim for a period of disability and disability insurance benefits. After careful review, the Court affirms the Commissioner's decision.

## I.   PROCEDURAL HISTORY

Ms. Clark applied for a period of disability and disability insurance benefits on July 30, 2012. (Doc. 8-6, pp. 2-8). Ms. Clark alleges that her disability began on July 25, 2012. (Doc. 8-6, p. 2). The Commissioner denied Ms. Clark's application for benefits. (Doc. 8-5, pp. 3-5). Ms. Clark requested a hearing before an Administrative Law Judge (ALJ). (Doc. 8-5, pp. 12-3). The ALJ issued an

unfavorable decision on November 7, 2013. (Doc. 8-3, pp. 25-7). On August 29, 2014, the Appeals Council declined Ms. Clark's request for review (Doc. 8-3, pp. 4-6), making the Commissioner's decision final and a proper candidate for this Court's judicial review. *See* 42 U.S.C. § 405(g).[1]

## II.  STANDARD OF REVIEW

The scope of review in this matter is limited. "When, as in this case, the ALJ denies benefits and the Appeals Council denies review," the Court "review[s] the ALJ's 'factual findings with deference' and [his] 'legal conclusions with close scrutiny.'" *Riggs v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 509, 510-11 (11th Cir. 2013) (quoting *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001)).

The Court must determine whether there is substantial evidence in the record to support the ALJ's findings. "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In making this evaluation, the Court may not "decide the facts anew, reweigh the evidence" or substitute its judgment for that of the ALJ. *Winschel v.*

---

[1] Ms. Clark is proceeding *pro se* in this Court, but she was represented by counsel during the hearing before the ALJ. (Doc. 8-3, pp. 41, 43). Consistent with the pleading standards that apply to *pro se* litigants, the Court has construed Ms. Clark's arguments liberally and has reviewed the record thoroughly. *See Gluchowski v. Comm'r of Soc. Sec.*, 2014 WL 2916750, at *5 n.4 (M.D. Fla. June 26, 2014) ("[A]lthough Plaintiff was represented by counsel at the hearing, Plaintiff is proceeding *pro se*. The Court must construe *pro se* pleadings liberally.") (internal citation omitted).

*Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citation omitted).  If the ALJ's decision is supported by substantial evidence, the Court "must affirm even if the evidence preponderates against the Commissioner's findings."  *Costigan v. Comm'r, Soc. Sec. Admin.*, 603 Fed. Appx. 783, 786 (11th Cir. 2015) (citing *Crawford*, 363 F.3d at 1158).

With respect to the ALJ's legal conclusions, the Court must determine whether the ALJ applied the correct legal standards.  If the Court finds an error in the ALJ's application of the law, or if the Court finds that the ALJ failed to provide sufficient reasoning to demonstrate that the ALJ conducted a proper legal analysis, then the Court must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III.   SUMMARY OF THE ALJ'S DECISION

To determine whether a claimant has proven that she is disabled, an ALJ follows a five-step sequential evaluation process.  The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

In this case, the ALJ found that Ms. Clark has not engaged in substantial gainful activity since July 25, 2012, the alleged onset date. (Doc. 8-3, p. 30). The ALJ determined that Ms. Clark suffers from the following severe impairments: osteoarthritis, diabetes, and obesity. (Doc. 8-3, p. 30).[2] The ALJ found that Ms. Clark's remote history of carpal tunnel syndrome, hidradenitis suppurativa, remote hospital visit for a motor vehicle accident, plantar fasciitis, allergic rhinitis, and hypertension are non-severe impairments. (Doc. 8-3, p. 30). Based on a review of the medical evidence, the ALJ concluded that Ms. Clark does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 8-3, p. 31).

Based on her impairments, the ALJ determined that Ms. Clark has the RFC to perform:

> medium work as defined in 20 CFR 404.1567(c) except that she could never climb ladders, ropes or scaffolds, only occasionally climb ramps or stairs, and frequently stoop, kneel, crouch, crawl, or engage in activities requiring balance. She should avoid concentrated exposure to extreme temperatures, irritants such as fumes, odors, dust, gases, or poorly ventilated areas, and avoid concentrated exposure to the operational control of moving machinery and unprotected heights.

(Doc. 8-3, p. 31). Based on this RFC, the ALJ concluded that Ms. Clark is unable to perform her past relevant work as a maintenance worker. (Doc. 8-3, pp. 34-5).

---

[2] Ms. Clark has type 2 diabetes. (Doc. 8-8, p. 89).

Relying on testimony from a vocational expert, the ALJ found that jobs exist in the national economy that Ms. Clark can perform, including patient transporter, food preparation worker, and counter clerk. (Doc. 8-3, p. 35). Accordingly, the ALJ determined that Ms. Clark has not been under a disability within the meaning of the Social Security Act. (Doc. 8-3, p. 36).

## IV.   ANALYSIS

Ms. Clark argues that she is entitled to relief from the ALJ's decision because (1) the ALJ did not give adequate weight to the opinion of her treating physician, Dr. Frederick Ransom; (2) the ALJ did not pay attention to the hearing as a whole; and (3) the ALJ did not refer Ms. Clark to an agency physician to further investigate her allegations of disability. (Doc. 10). The Court examines each issue in turn.

### A.   Substantial Evidence Supports the ALJ's Decision to Give Dr. Ransom's Opinion Little Weight.

An ALJ must give considerable weight to a treating physician's medical opinion if the opinion is supported by the evidence and consistent with the doctor's own records. *See Winschel*, 631 F.3d at 1179. An ALJ may refuse to give the opinion of a treating physician "substantial or considerable weight . . . [if] 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding;

5

or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240-41; *see also Crawford*, 363 F.3d at 1159. The ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Gaskin v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 929, 931 (11th Cir. 2013) (internal quotation and citation omitted).

In this case, the ALJ gave Dr. Ransom's assessment of Ms. Clark little weight because he found that the conclusions that Dr. Ransom reported in a physical capacities evaluation form were inconsistent with Ms. Clark's medical records. (Doc. 8-3, p. 34). The ALJ found that Dr. Ransom's opinions were not accompanied by evidence of thorough functional testing or treatment notes. (Doc. 8-3, p. 34). The ALJ had good cause to give little weight to Dr. Ransom's opinion because the opinions that Dr. Ransom provided for purposes of Ms. Clark's disability evaluation were inconsistent with the advice that he gave Ms. Clark over the many years that he treated her.

In January 2013, for purposes of Ms. Clark's disability evaluation, Dr. Ransom completed a physical capacities evaluation form for Ms. Clark. (Doc. 8-9, p. 37). Dr. Ransom opined that Ms. Clark can lift 20 pounds occasionally and ten pounds frequently. He opined that Ms. Clark can sit for six hours in an 8-hour work day and stand or walk for three hours in an 8-hour work day. (Doc. 8-9, p. 37). According to Dr. Ransom, Ms. Clark can rarely climb ladders or stairs,

balance, bend and/or stoop, operate a motor vehicle, and work around hazardous machinery. Dr. Ransom explained that Ms. Clark occasionally can push or pull and reach, including overhead. Dr. Ransom opined that Ms. Clark frequently can engage in gross and fine manipulation. (Doc. 8-9, p. 37). According to Dr. Ransom, Ms. Clark can work for only four hours in an 8-hour work day, and she likely would miss four days of work per month. (Doc. 8-9, pp. 37-8). Dr. Ransom attributed these limitations to Ms. Clark's degenerative arthritis in her back and in her knees. (Doc. 8-9, p. 37).

Dr. Ransom also completed a clinical assessment of pain form in conjunction with Ms. Clark's application for disability benefits. Dr. Ransom opined that Ms. Clark's pain is present to such an extent that it distracts her from adequate performance of daily activities or work. (Doc. 8-9, p. 36). Dr. Ransom concluded that physical activity such as walking, standing, sitting, bending, stooping, or moving extremities would greatly increase Ms. Clark's pain to such a degree as to cause distraction from tasks or total abandonment of tasks. (Doc. 8-9, p. 36).

The information in the physical capacities evaluation form and in the clinical assessment of pain form is at odds with Ms. Clark's medical records. Dr. Ransom treated Ms. Clark for a number of years before he completed those forms. (Doc. 10). The medical records from Dr. Ransom date to 1999. (Doc. 8-8, pp. 34-110).

Ms. Clark visited Dr. Ransom in March 2000 for an evaluation of chest pain. A cardiac catheterization revealed no significant coronary obstruction, and an echocardiogram was normal. Dr. Ransom encouraged Ms. Clark "to be as physically active as she can be." (Doc. 8-8, pp. 80-81). Dr. Ransom wrote that Ms. Clark "has a reasonably physical job and thinks that job related activity may have aggravated her chest discomfort." (Doc. 8-8, p. 81). Dr. Ransom released Ms. Clark to return to "full duty" at her job after she recovered from her heart procedure. (*Id.*).

In April 2000, Ms. Clark continued to complain of chest pain, but she was walking and riding a bike "with only minimal symptoms." (Doc. 8-8, p. 80). By June 2000, Ms. Clark was feeling better. Dr. Ransom wondered if her chest pain might be esophageal spasm rather than cardiac pain. (Doc. 8-8, p. 79). Ms. Clark reported that she had stopped smoking; however, by December 2001, Ms. Clark's records indicate that she had resumed smoking. (*Id.* at 76, 79).

Ms. Clark continued to see Dr. Ransom on a regular basis. She resisted advice about exercise though examinations revealed no physical impediment to an exercise routine. (Doc. 8-8, pp. 71-75; 92-98).

Ms. Clark saw Dr. Ransom for treatment in August 2008. Ms. Clark complained again of chest pain. Dr. Ransom explained that the pain "is not consistently exertional, left anterior chest pain and unassociated with any

8

significant problems." Dr. Ransom noted that Ms. Clark was under a lot of stress because of a threatened foreclosure on her house, and she admitted that she had stopped exercising because of the stress. Ms. Clark's lab results revealed a normal blood sugar. Ms. Clark had "a clear chest, regular cardiac rhythm without murmurs, rubs or gallops." Ms. Clark also had a "full range of motion in the hips, knees, and ankles with a little bit of crepitance to knee exam passive movement." Dr. Ransom noted that Ms. Clark has chronic low back pain and degenerative arthritis for which she took glucosamine/chondroitin "infrequently"; Dr. Ransom instructed Ms. Clark to increase her physical activity. (Doc. 8-8, pp. 89-90).[3]

Ms. Clark returned to visit Dr. Ransom in March 2009. Ms. Clark was stable; her symptoms were largely unremarkable. Dr. Ransom reported that Ms. Clark was still under a lot of stress, was walking "on a very limited basis," and had gained weight. Dr. Ransom strongly encouraged Ms. Clark to "develop a consistent program of aerobic exercise and to restrict calories." (Doc. 8-8, pp. 87-88). A record from September 2009 indicates that Ms. Clark's exercise program was working well. Dr. Ransom encouraged her to maintain the program and to take her diabetes medication. (Doc. 8-8, p. 86).

Ms. Clark saw Dr. Ransom again in March 2010. Dr. Ransom recounted Ms. Clark's previous episodes of chest pain and noted that her electrocardiogram

---

[3] A medical record from February 2008 states that Ms. Clark was "exercising consistently" at the time. (Doc. 8-8, p. 91).

demonstrated no acute change. Ms. Clark had generally acceptable blood sugars. Dr. Ransom noted that Ms. Clark suffered bilateral knee pain and low back pain consistent with her degenerative arthritis. Ms. Clark demonstrated "mild lower lumbar spinous process percussion tenderness" and "bilateral knee crepitus with passive movement." Ms. Clark's high blood pressure was well-controlled, and she reported no other symptoms. Ms. Clark had not been following her exercise program and had gained weight. (Doc. 8-8, p. 85).

In June 2010, Dr. Ransom noted that Ms. Clark had started an exercise program, and she was "subjectively stable." Ms. Clark reported that her blood sugar levels were acceptable, and a recent "cardiac cath […] demonstrated no obstruction." Dr. Ransom observed that Ms. Clark had "generally stable cardiac function with no prolonged episodes of chest pain and no palpitations." Dr. Ransom noted that Ms. Clark's bilateral knee pain "seems to be responding to her increasing her exercise program" and that Ms. Clark was "otherwise doing reasonably well." (Doc. 8-8, p. 102).

Ms. Clark saw Dr. Ransom again in March 2012. During that visit, Ms. Clark reported that she was experiencing side effects from her cholesterol medication. Dr. Ransom observed that Ms. Clark still had allergic rhinitis that was "moderately symptomatic" due to her work outdoors. Dr. Ransom changed Ms. Clark's cholesterol medication and noted that the new prescription "may be of

some value in controlling [Ms. Clark's] diabetes." Dr. Ransom advised Ms. Clark to return in four months. (Doc. 8-8, p. 107).

On July 3, 2012, Ms. Clark saw Dr. Ransom for a follow-up visit after Ms. Clark experienced a syncopal episode while working in a hot environment. (Doc. 8-8, pp. 108-9). In the report, Dr. Ransom noted Ms. Clark's history of "chronic allergic rhinitis, type 2 diabetes mellitus, degenerative arthritis, hypertension, hidradenitis suppurativa and rotator cuff tendonitis and plantar fasciitis." (Doc. 8-8, p. 108). On examination, Ms. Clark displayed a "clear chest, regular cardiac rhythm […], full range of motion in the hips, knees, and ankles, no calf or thigh tenderness." (Doc. 8-8, p. 108). Dr. Ransom described Ms. Clark's syncopal episode as "a mild degree of heat stroke." (Doc. 8-8, p. 108). Dr. Ransom observed that Ms. Clark's other problems were stable and recommended that she work in a climate controlled environment for the next month. (Doc. 8-8, pp. 108-9). Dr. Ransom also encouraged Ms. Clark to exercise and diet. (Doc. 8-8, p. 109).

None of these medical records is consistent with the information that Dr. Ransom provided in 2013 when he completed that physical capacities evaluation form for Ms. Clark. (Doc. 8-9, p. 37). Dr. Ransom's finding that Ms. Clark can work only four hours in an 8-hour work day contradicts records in which he encouraged Ms. Clark to exercise and to return to work after she experienced mild

heat stroke. Longitudinally, Dr. Ransom's records reflect that Ms. Clark was reluctant to exercise despite Dr. Ransom's consistent urging. Dr. Ransom's evaluation is also contradicted by Ms. Clark's activities of daily living. *See Wind v. Barnhart*, 133 Fed. Appx. 684, 692 (11th Cir. 2005) (ALJ may consider a claimant's daily activities when making a RFC determination). On August 14, 2012, Ms. Clark noted that, despite her limitations, she lived alone and was capable of exercising on the treadmill and tending to chores around the house, although she had trouble lifting, bending, reaching, walking, and climbing stairs. (Doc. 8-7, pp. 12, 16, 18-9). Ms. Clark had also stated that her condition did not cause her to make changes in her work activity. (Doc. 8-7, p. 6). The ALJ noted that Ms. Clark stopped working not because of her alleged disability but because she was laid off. (Doc. 8-7, p. 6).

Because Dr. Ransom's opinion is inconsistent with both the medical evidence in the record and Ms. Clark's activities of daily living, the Court finds good cause to give the treating physician's opinion less weight. Consequently, the ALJ's decision is supported by substantial evidence. *Crawford*, 363 F.3d at 1159-61 (finding that substantial evidence supported the ALJ's decision to discredit the opinions of the claimant's treating physicians where those physicians' opinions regarding the claimant's disability were inconsistent with the physicians' treatment notes and unsupported by the medical evidence); *see also Reynolds-Buckley v.*

*Comm'r of Soc. Sec.*, 457 Fed. Appx. 862 (11th Cir. 2012) (substantial evidence supported the ALJ's decision to give less weight to a treating physician's opinion when the doctor's opinion was "inconsistent with the medical evidence on record and was not supported by any treatment notes or by an analysis of any test results").

    **B.    The ALJ Afforded a Fair Hearing and Developed a Full and Fair Record.**

Ms. Clark questions generally the ALJ's attentiveness to the administrative hearing. Ms. Clark questions specifically why certain information either is not contained in the administrative record or was not considered by the ALJ. Neither argument is a basis for remand.

The record demonstrates that the ALJ afforded Ms. Clark a fair hearing. Ms. Clark's attorney gave an opening statement that summarized Ms. Clark's allegations of disability. (Doc. 8-3, pp. 43-4). The ALJ questioned her extensively about her impairments and why she believes she cannot work. (Doc. 8-3, pp. 44-51). The ALJ then asked Ms. Clark a series of questions about her work history and her efforts to obtain employment. (Doc. 8-3, pp. 51-3). The ALJ posed a series of hypothetical questions to a vocational expert. (Doc. 8-3, pp. 53-7). The administrative hearing transcript demonstrates that the ALJ "gave [Ms. Clark] every opportunity to present all [her] evidence . . . and the final decision of the ALJ

does not reveal any bias." *Otto v. Comm'r of Soc. Sec.*, 171 Fed. Appx. 782, 785 (11th Cir. 2006).

The record also demonstrates that the ALJ met his "basic obligation to develop a full and fair record." *Larry v. Comm'r of Soc. Sec.*, 506 Fed. Appx. 967, 969 (11th Cir. 2013). Ms. Clark complains that treatment records from her chiropractor are absent from the administrative record. (Doc. 10). When Ms. Clark completed forms in July 2012 and October 2012, the only medical provider she listed was Dr. Ransom. (Doc. 8-7, pp. 9, 26). In July 2013, the agency wrote a letter to Ms. Clark's attorney and asked her attorney to provide "[a]ll medical records . . . from one year prior to the alleged onset date to the present and any other relevant medical, school or other records not already in file." (Doc. 8-7, pp. 32-3). In response, Ms. Clark submitted information regarding her medications, but neither Ms. Clark nor her attorney provided additional treatment records from her chiropractor or other providers. (Doc. 8-7, p. 44). "The claimant bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of h[er] claim." *Ellison v. Barnhart*, 355 F. 3d 1272 (11th Cir. 2003); *see also McCloud v. Barnhart*, 166 Fed. Appx. 410, 418 (11th Cir. 2006) ("To the extent McCloud contends that the ALJ should have obtained records for treatment of which there is no evidence in the record, McCloud was in

the best position to inform the ALJ as to her treatment history, and by failing to do so, she failed to meet her burden.").[4]

Ms. Clark also maintains that she currently is receiving treatment at Cooper Green and that these "recent records" are relevant to her allegations of disability. (Doc. 10). Ms. Clark did not attach the records to her complaint or brief. Therefore, the Court cannot determine whether the records are relevant. Additionally, Ms. Clark's description of the "recent records" suggests that they post-date the ALJ's decision, in which case the records are not chronologically relevant to the period of disability that the ALJ considered. (Doc. 11, p. 14); *see* 20 C.F.R. § 404.970(b) (information is chronologically relevant if "it relates to the period on or before the date of the [ALJ] hearing decision"); *Costigan*, 603 Fed. Appx. at 787 ("The information post-dated the hearing by four to eight months, and thus does not bear directly on Costigan's subjective complaint of pain at the time of the hearing.").

---

[4] The Court also notes that pursuant to § 404.1513(a), Ms. Clark's chiropractor does not meet the definition of an "acceptable medical source." 20 C.F.R. § 404.1513(a). "Acceptable medical sources" are defined as licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, and in certain situations licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a). Chiropractors do not fall under the category of "other sources" in § 404.1513(d)(1). Because Ms. Clark's chiropractor is not considered an "acceptable medical source," his "opinion cannot establish the existence of an impairment." *Crawford*, 363 F.3d at 1160. Therefore, information contained in treatment notes from Ms. Clark's chiropractor would be of little probative value.

Finally, Ms. Clark complains that a hardship letter and a Congressional inquiry concerning the delay in her case were not included in the administrative record. Ms. Clark contends that the ALJ did not consider her work ethic when making his decision. The Court is not unsympathetic to Ms. Clark's situation, and the Court has no reason to doubt Ms. Clark's work ethic; however, the information is not relevant to a determination of whether Ms. Clark is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A).

### C. The ALJ Did Not Err by Failing to Order a Consultative Examination.

Ms. Clark argues that the ALJ should have ordered a consultative examination to further investigate her allegations of disability. The Eleventh Circuit Court of Appeals recently reiterated that in making an RFC assessment, an ALJ "'has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision.'" *Castle v. Colvin*, 557 Fed. Appx. 849, 853 (11th Cir. 2014) (quoting *Ingram v. Comm'r of Soc. Sec. Admin.,* 496 F.3d 1253, 1269 (11th Cir. 2007)); *see also Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1210 (M.D. Ala. 2002) (An ALJ "is not required to order a consultative

examination unless the record, *medical* and *non-medical*, establishes that such an examination is necessary to enable the ALJ to render a decision.") (emphasis in *Sellers*). In this case, the record contained sufficient evidence for the ALJ to make an informed decision about Ms. Clark's RFC. The administrative record contains the forms that Dr. Ransom completed for purposes of Ms. Clark's benefits application and medical records from Dr. Ransom that span more than a decade. (Doc. 8-8, pp. 2-4, 71-102, 107-9; Doc. 8-9, pp. 3-12, 18, 22, 28-9, 31-2, 36-8, 40-1). The administrative record also contains treatment notes from a number of visits to UAB University Hospital. (Doc. 8-8, pp. 5-10, 23-30, 32-37). The record contains results from lab tests that did not identify significant problems. (Doc. 8-8, pp. 38-70). Ms. Clark indicated that she stopped working because she was laid off, not because of her physical impairments. (Doc. 8-7, p. 6). In fact, Ms. Clark worked for years after Dr. Ransom diagnosed her impairments. (Doc. 8-3, p. 33; Doc. 8-7, p. 7). The record also contains testimony from Ms. Clark about her impairments. (Doc. 8-3, pp. 45-51). Lastly, Ms. Clark stated that she cooks for one or two hours at a time two or three times a week, shops, reads, walks on a treadmill three days per week, visits the sick, and attends church frequently. (Doc. 8-7, pp. 16-7).

The ALJ determined that the residual functional capacity was supported by "the weight of credible evidence, including treatment records, evidence of the

claimant's activities, opinion evidence, and objective medical evidence." (Doc. 8-3, p. 34). Therefore, the ALJ was not required to order a consultative examination. *See e.g.*, *Castle*, 557 Fed. Appx. at 853; 20 C.F.R. § 404.1519a(a)(2) ("When we purchase a consultative examination, we will use the report from the consultative examination to try to resolve a conflict or ambiguity if one exists. We will also use a consultative examination to secure needed medical evidence that the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision.").

## V. CONCLUSION

For the reasons discussed above, the Court finds that the ALJ's decision is supported by substantial evidence, and the ALJ applied proper legal standards. The Court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Accordingly, the Court affirms the Commissioner. The Court will enter a separate final judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this May 31, 2016.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE